IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL HEMINGWAY d/b/a | : | CIVIL ACTION |
| INTERNATIONAL REALTY | : | NO. 14-7036 |
| SOLUTIONS, LLC, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| LEE MAUGER, d/b/a | : | |
| MAUGER & METER, ATTORNEYS | : | |
| AT LAW, et al. | : | |

O'NEILL, J.                                                                                       January 30, 2017

### MEMORANDUM

I have before me a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure filed by plaintiffs Daryl and Dave Hemingway, doing business as International Realty Solutions, LLC.  Dkt. Nos. 44 and 47.  Plaintiffs bring this suit against Lee Mauger, doing business as Mauger & Meter, Attorneys at Law.[1]  Unforeseen legal complications and discoveries have led to several rounds of argument about whether summary judgment in defendant's favor is appropriate.[2]  I now have before me plaintiffs' letter, Dkt. No. 44, plaintiffs' motion for reconsideration of my November 22 Order, Dkt. Nos. 47 (motion for reconsideration) and 45 (November 22 Order), defendant's response, Dkt. No. 48, and plaintiffs' reply, Dkt No.

---

[1]   The defendants in this action are Lee Mauger d/b/a Mauger & Meter, Attorneys at Law, Mauger & Meter, Attorneys at Law and "John Does 1–10."  Because the only remaining claim in this action centers on Lee Mauger's actions, I will refer to him as defendant.

[2]   On November 22, 2016, after oral argument on a motion for reconsideration of my March 15, 2016 denial of summary judgment on plaintiffs' breach of contract claim (Count II), I granted summary judgment on that claim.  Dkt. No. 45.  That day, plaintiffs filed a supplemental response to a question I had raised at oral argument about the correct interpretation of Pennsylvania's recording statute.  Dkt. No. 44.  Because I received their letter after I filed my order, I treated it as a motion for reconsideration and requested briefing from both parties on the previously undiscussed issue of the application of 21 Pa. Cons. Stat § 351 to this case.  Dkt. No. 46.

50. The issue before me is whether defendant's failure to record plaintiffs' mortgage in 2007[3] caused plaintiffs' mortgage on the property to be extinguished in a subsequent foreclosure sale and therefore caused plaintiffs to incur actual loss. I hold that had defendant recorded plaintiffs' mortgage before the writ of execution was entered on the property, plaintiffs' interest would have been in first position and thus would not have been extinguished by the foreclosure. Therefore, plaintiffs have shown that a reasonable jury could find that the failure to record caused them loss. I will now grant plaintiffs' motion to alter my November 22, 2016 decision and deny summary judgment for defendant on Count II.

## STANDARD OF REVIEW

Under Rule 59(e) of the Federal Rules of Civil Procedure, a judgment may be altered or amended if the movant shows a need to correct a clear error of law to prevent manifest injustice. Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). Summary judgment is properly granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A fact is "material" if it might affect the outcome of the case under governing law. Id. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

---

[3] Because I resolve all inferences, doubts, and issues of credibility against the movant, I take as true for the purposes of summary judgment that defendant was contractually obligated to plaintiffs to record the mortgage. See Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978).

**BACKGROUND**

In April 2007, plaintiffs issued a mortgage on property located at 3814 W. Girard Ave., Philadelphia, PA 19104 to a development company in exchange for a note for $43,451.60 plus 40 percent interest.[4]  Dkt. No. 23 (Pls.' Opp'n To Summ. J.), 3 ¶ 1.  Plaintiffs decided not to record the mortgage at the time it issued for business reasons.  Dkt. No. 23, Ex. C (Daryl Hemingway Dep.) at 80:3–11.  Several months later, when the development company defaulted on the loan, plaintiffs sought to record the mortgage.  Dkt. No. 23, 3 ¶ 2.  They asked defendant, an attorney, to send a demand payment letter to the development company.  Id.  Plaintiff Daryl Hemingway testified that he also asked defendant to record their mortgage on the property.  Id. at 4 ¶ 3.  It is undisputed that defendant did not record the mortgage.  Id. at ¶ 4.

In the years following 2007, Brenda Armstrong, an investor in the development company, obtained a judgment against the company.  Dkt. No. 19, Ex. I (Affidavit of Service upon All Interested Parties), 60; Dkt. No. 40 (Pl.'s Pretrial Mem.) at ¶8 (mentioning that Armstrong was an investor in the development company).  Subsequently, she obtained a writ of execution on the property and it was scheduled for a sheriff's sale.  Dkt. No. 19, Ex. I (Writ of Execution), 56–59.  Upon learning of the planned sale and realizing their mortgage was not recorded, plaintiffs recorded their mortgage on July 11, 2011, the day before the scheduled sheriff's sale.  Dkt. No. 23, 5 ¶ 10.  At the sale, Armstrong bought the property for $600.  Dkt. No. 19, Ex. I at 54 (Philadelphia Real Estate Transfer Tax Certification, Aug. 8, 2011).

---

[4]  Although I am aware that, under Pennsylvania's Maximum Interest Rate Act, 41 Pa. Stat. Ann. §§ 101–605, a "business loan" is not subject to the six percent per annum cap, see 10 Pa. Code § 7.2 (defining a "business loan"); Smith v. Mitchell, 616 A.2d 17, 21–22 (1992) (applying a nontechnical interpretation of that definition), the exceedingly high rate charged by plaintiffs here gives me pause.

3

Armstrong filed an action to quiet title against plaintiffs in the Philadelphia County Court of Common Pleas. Id. at ECF p. 4. She made two arguments in her successful motion for summary judgment. First, she argued that 21 Pa. Stat. Ann. § 444 precluded plaintiffs' title:

> [i]n Pennsylvania, in order for a mortgage to be a valid lien against subsequent purchasers of a property, it must be recorded within 90 days of execution. See, 21 P.S. § 444. In this instance, the Mortgagee took *over four years* to put its alleged mortgage of record . . . . [Therefore a]s a subsequent purchaser, under Pennsylvania law, the mortgage is deemed void as a matter of law.

Dkt. No. 19, Ex. I, 47 ¶¶ 16, 17 (emphasis in original). Second, she contended that plaintiffs' title was precluded because they recorded their mortgage after the filing of the Writ of Execution, which "means that the lien does not attach, as the mortgagee recorded subject to the public record." Dkt. No. 19, Ex. J, 47 ¶ 17.

The Court of Common Pleas granted Armstrong's motion on March 19, 2013, without an opinion. Dkt. No. 19. Ex. J, 83. Plaintiffs chose not to appeal their loss because their attorney at the time explained that their claim was meritless under 21 Pa. Stat. Ann. § 444, in accordance with Armstrong's first argument. Dkt. No. 23-1, 8 ¶ 46.

## DISCUSSION

In my March 15, 2016 Order granting in part and denying in part defendant's motion for summary judgment, I held that a reasonable jury could find that a contract existed between defendant and plaintiff and that defendant breached by not recording the mortgage. Dkt. Nos. 28 and 29. The issue before me now, on reconsideration, is whether such a breach could have caused plaintiffs any actual loss. Duke & Co. v. Anderson, 418 A.2d 613, 615–17 (Pa. Super. Ct. 1980) (holding that, in a breach of contract action against an attorney, a plaintiff must show actual loss). With respect to this issue, I now hold that plaintiffs could show loss despite: 1) their failure to record within ninety days of creating the mortgage and 2) their failure to make the

proper legal arguments in the Court of Common Pleas quiet title action against Armstrong. Thus, on the record before me, defendant is not entitled to summary judgment on plaintiffs' breach of contract claim.

## I. Failure to Record Within Ninety Days

First, all parties now concede, in light of my November 29 Order, Dkt. No. 46, that 21 Pa. Stat. Ann. § 351 effectively added a "savings clause" into 21 Pa. Stat. Ann. § 444 such that mortgages recorded after 90 days are not deemed fraudulent and void if the subsequent purchaser had notice of the earlier conveyance. See In re Bella Vista Assoc., LLC, 388 B.R. 99, 103 (Bankr. D.N.J. 2008) (explaining that § 351 was passed after § 444 and was intended to reintroduce a savings clause into § 444's 90-day requirement); Dkt. No. 47 (Pls.' Mot. for Reconsider.), 3; Dkt. No. 48 (Def.'s Response in Opp. to Pl.'s Mot. for Reconsider.), 1. Because Armstrong record notice of plaintiffs' mortgage when she purchased the property at the sheriff's sale in July 2011, the mortgage was not fraudulent and void as to Armstrong. Therefore, plaintiffs are not precluded from showing actual loss by their failure to record within the first ninety days of the mortgage's existence.

## II. Legal Arguments at the Court of Common Pleas

Second, defendant argues that plaintiffs' misunderstanding of the application of § 444 caused both their failure to argue at the Court of Common Pleas that § 351 applied to save their mortgage and their failure to appeal the Court of Common Pleas' judgment. Dkt. No. 48, 4. Defendant contends that this misunderstanding was an intervening cause of plaintiffs' damages and therefore that he is not liable for the extinguishment of the mortgage. Id. I hold, however, that the misunderstanding is not an intervening cause of plaintiffs' loss because defendant's actions alone were sufficient to cause the loss. Even though § 351 prevents plaintiffs' mortgage

from being deemed fraudulent and void against Armstrong, it does not establish that their mortgage took priority over other interests in the property prior to the sheriff's sale. Rather, according to Pennsylvania's law of priority, plaintiffs' mortgage was extinguished because it was recorded after the writ of execution created a lien on the property.

Under Pennsylvania law, a mortgage takes priority according to the time it is recorded, whereas a writ issued and indexed by the clerk of the court of common pleas and creating a lien against real property takes priority according to the time it is issued. 42 Pa. Cons. Stat. § 8141(2) (mortgages), § 8141(6) (writs). After a foreclosure, mortgages that are junior to the foreclosing interest are extinguished while mortgages that are senior to that interest remain on the property. 42 Pa. Cons. Stat. § 8152(a) ("Except as otherwise provided in this section, a judicial or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property" with three inapplicable exceptions); 42 Pa. Cons. Stat. § 8152(c) ("A judicial or other sale of real estate in proceedings under a prior judgment . . . shall discharge a mortgage later in lien."); KAB Loan Servs., LLC v. Wells Fargo Bank, No. 1425-2015, 2016 Pa. Super. LEXIS 2577, at *11 (Pa. Super. Ct. July 19, 2016).

Here, the writ of execution was issued in July 2009. Dkt. No. 19, Ex. I (Writ of Execution), 56–59. Plaintiffs recorded their mortgage in July 2011. Dkt. No. 23, 5 ¶ 10. Thus, Armstrong's lien, created by the writ of execution, took priority over plaintiffs' mortgage. In contrast, had defendant recorded plaintiffs' mortgage in 2007, their interest would have been senior to the lien created by the writ of execution and would have remained on the property after the foreclosure. Given that it was not recorded until after the writ issued, it was a junior interest and was extinguished by the foreclosure.

Thus, as plaintiffs did not record until after the writ of execution was issued, they would have lost the quiet title action regardless of whether they had brought up § 351 in the Court of Common Pleas and regardless of whether they had appealed that court's decision. Although their then-lawyer's failure to cite § 351 may have been negligent and could have caused plaintiffs' loss had the mortgage been recorded before the issuance of the writ, the facts preclude that causal link since plaintiffs had no legal right to an interest in the property after the sale.

Defendant cites Merrill Lynch v. Mortgage Capital, 859 A.2d 788 (Pa. Super. Ct. 2004) for the proposition that an interest in a property that is recorded before a subsequent sheriff's sale of that property takes priority over the ownership interest of the party who purchases the property at the sheriff's sale. Dkt. No. 48, 2–3. Defendant argues that Merrill Lynch shows that plaintiffs were entitled to the property as of January 2013 and that it was plaintiffs'—or, perhaps, plaintiffs' lawyers'—negligent failure to argue this point in the Court of Common Pleas that caused their mortgage to be extinguished. Dkt. No. 48, 2–3.

Merrill Lynch is inapposite for three main reasons: first, the issue in that case was the relative priority of the interest in the property acquired before the sale, on the one hand, and that of the at-sale purchaser, on the other. 859 A.2d at 790. In contrast, here the issue is the relative priority of two interests—Armstrong's lien and plaintiffs' mortgage—both of which preceded the sheriff's sale.[5]

Second, the plaintiffs in Merrill Lynch were attempting to set aside a sheriff's sale, id. at 789, whereas here plaintiffs in the Court of Common Pleas were attempting to assert the ongoing existence of a mortgage on the property. See Dkt. No. 19, Ex. J, at ECF p. 75 (Armstrong's

---

5     This might not be immediately apparent because Armstrong was both the foreclosing interest holder and the purchaser at the sheriff's sale.

Proposed Order in the Court of Common Pleas, Jan 7, 2013) (asking the court order that the mortgage "shall be discharged and shall not constitute a lien or encumbrance on" the property). Thus, the portion of 42 Pa. Cons. Stat. § 8141 that applies here to govern the priority of liens and mortgages did not govern the outright purchase that occurred in <u>Merrill Lynch</u>.

Finally, third, the <u>Merrill Lynch</u> plaintiffs petitioned the court within ten days following the sheriff's sale under the safety valve provided in Pa. Rule of Civ. Proc. 3132 to set aside the sale because they had purchased the property directly from the previous property owner before the sale occurred. 859 A.2d at 792. Neither that rule nor those circumstances are at issue in this case.

Therefore, because there is a need to correct a clear error of law with respect to the application of §§ 444 and 351 and regarding the causal effect of plaintiffs' having recorded after the writ of execution was entered, I will alter my November 22, 2016 judgment. Dkt. No. 45. I will now deny defendant's motion for summary judgment on Count II.